**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JEREMY MATTWAOSHSHE, *et al.*, Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| UNITED STATES OF AMERICA, *et al.*, Federal Defendants, | ) ) ) |
| and | ) ) |
| NEXTERA ENERGY, INC., *et al.* | ) ) ) |

Case No. 20-cv-1317 (TSC)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Justin Stallbaumer and Jeremy Mattwaoshshe have sued to stop the

construction of a wind generation project in Nemaha County, Kansas.  Plaintiffs claim that

Defendants Soldier Creek Wind LLC, NextEra Energy Inc. and its subsidiaries[1] (hereinafter "the

NextEra Defendants"), and Evergy Kansas[2] (collectively "the Corporate Defendants") were

negligent in constructing the project and that the project is a private nuisance under Kansas law.

Plaintiffs also seek miscellaneous relief against a number of federal entities, including the

Department of Transportation, the Federal Aviation Administration ("FAA"), the Federal Energy

---

[1] NextEra's subsidiaries include NextEra Energy Resources, LLC, NextEra Energy Constructors, LLC, NextEra Energy Transmission Southwest, LLC, NextEra Energy Marketing, LLC, NextEra Energy Operating Services, LLC, and NextEra Energy Project Management, LLC.  *See* ECF No. 18.

[2] The Amended Complaint names "Westar Energy aka Evergy Kansas Central, Inc." as a Defendant.  "Westar Energy" is not and has never been registered to do business in Kansas and Evergy Kansas Central, Inc. ("Evergy") does not have any subsidiaries by that name.  Plaintiffs attempted to serve the registered agent of Evergy, thus Evergy is responding to the Amended Complaint and the court refers to Evergy where Plaintiffs refer to Westar Energy.

Regulatory Commission ("FERC"), the U.S. Army Corps of Engineers, the U.S. Department of Justice, and the heads of each of those agencies in their official capacities (collectively "the Federal Defendants").

Presently before the court are motions to dismiss for lack of personal jurisdiction submitted by Evergy and NextEra (ECF Nos. 39, 40), and motions to dismiss for lack of subject-matter jurisdiction submitted by Solider Creek and the Federal Defendants (ECF Nos. 36, 38). The court concludes that it lacks jurisdiction over Plaintiffs' claims and, accordingly, will GRANT all four motions.

## I.   BACKGROUND

On May 18, 2020, Stallbaumer, a Kansas resident, and Mattwaoshshe, a citizen of the Kickapoo Nation and Indian Tribe, filed a class action complaint, seeking to enjoin the construction of the Soldier Creek Wind Project in southern Nemaha County, Kansas.  In short, Plaintiffs, who live near the project site, allege that the wind towers erected as part of the project will damage their health, kill local endangered species, and interfere with their quiet and peaceful enjoyment of their properties.  ECF No. 43, Am. Compl. ¶ 17.

Plaintiffs also moved for a temporary restraining order on the same date they filed their initial complaint.  ECF No. 3.  On June 16, 2020 the court denied the motion, finding it unlikely that Plaintiffs could establish personal jurisdiction over the Corporate Defendants.  ECF No. 28. The court also ordered the parties to show cause as to why this case should not be transferred to the U.S. District Court for the District of Kansas, although it ultimately declined to transfer the action.  *Id*.  Plaintiffs were granted leave to amend their complaint on July 2, 2020.  ECF No. 33. On January 1, 2021, they informed the court that the Soldier Creek Project had become fully operational sometime in late 2020.  ECF No. 54.  Although Plaintiffs had sought an injunction to

prevent the project's construction, their claims are not moot, because they also seek damages related to the way the project was built and operates.

Plaintiffs allege that FERC violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 796 et seq., and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 et seq., in allowing NextEra to connect the wind energy project to the national electric grid.  Am. Compl. ¶¶ 52, 54–56.  Plaintiffs next contend that the FAA (and, by extension, the Department of Transportation) violated NEPA in failing to perform an Environmental Assessment or to prepare a full Environmental Impact Statement, *id.* ¶¶ 35–51, and violated the ESA in issuing a series of "no hazard" determinations under 14 C.F.R. § 77.9, *id.* ¶ 52.  Plaintiffs also claim the U.S. Army Corps of Engineers violated the ESA by granting permits to NextEra to transport heavy construction equipment over controlled waterways.  *Id.* ¶ 53.  Lastly, invoking various provisions of Title 25 and the American Indian Religious Freedom Act, 42 U.S.C. § 1996, Plaintiffs seek a mandamus order directing the Department of Justice to represent Plaintiff Jeremy Mattwaoshshe and his tribe in this matter.  Am. Compl. ¶ 60–65.

Plaintiffs also bring Kansas state law nuisance and negligence claims against Evergy, the NextEra Defendants, and Soldier Creek, alleging that the Soldier Creek Project unreasonably interferes with the use and enjoyment of their property and that these Defendants violated a duty of care owed to Plaintiffs in the planning and construction of the project.  *Id*. ¶¶ 76–84.

The Federal Defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction.  ECF No. 36.  They argue that the appellate courts have exclusive jurisdiction over the claims against FERC and the FAA (and, by extension, the Department of Transportation).  ECF No. 38.  They also contend that Plaintiffs have failed to

meet the jurisdictional prerequisites to maintain their claims against the Army Corps of Engineers and the Department of Justice.  *Id.*

Defendants Evergy and NextEra have moved to dismiss pursuant to Fed. R. Civ. P.12(b)(2).  ECF Nos. 39, 40, arguing that Plaintiffs have failed to allege a sufficient nexus between their claims and these companies' contacts with the District of Columbia for this court to exercise personal jurisdiction.

And while Defendant Soldier Creek has consented to personal jurisdiction, it asks the court to decline to exercise supplemental jurisdiction over the state law claims.

For the reasons that follow, the court finds that it lacks jurisdiction to adjudicate any of Plaintiffs' claims against the Federal Defendants and Defendants Evergy and NextEra.  The court also declines to exercise supplemental jurisdiction over Soldier Creek.  Accordingly, the complaint will be dismissed.

## II.   DISCUSSION

### A.  **Federal Defendants**

Jurisdiction to review both FERC and FAA orders is vested exclusively in the courts of appeals, not with this court.[3]  Plaintiffs also failed to provide the required sixty-day notice of

---

[3] The Federal Defendants initially argued that any NEPA or ESA claims against FERC were not ripe for review because they related to a "potential future interconnection order."  ECF No. 36-1 at 8.  However, on February 16, 2021, they notified the court that Soldier Creek entered into a FERC-approved standard interconnection agreement with a private nonprofit corporation, Southwest Power Pool, Inc.  ECF No. 55 at 2.  Because the agreement fully conformed with the FERC-approved standard interconnection agreement, Southwest Power Pool was required only to report that it entered into that agreement in its quarterly report.  *Id.* at 4.  Accordingly, because the Soldier Creek Project has already connected to the interstate electric grid, Plaintiffs' NEPA and ESA claims against FERC are ripe for review.

The Federal Defendants also argue that, due to the interconnection agreement, "Plaintiffs now fail to state a claim against FERC because they are not alleging an action or inaction by the

their intent to sue the Army Corps of Engineers under the ESA.  Finally, Plaintiffs' request for an order of mandamus will be denied because neither Title 25 nor AIRFA require the Department of Justice to litigate on Plaintiffs' behalf.

1. Standard for Motion to Dismiss for Lack of Subject-Matter Jurisdiction

When a defendant files a motion to dismiss a complaint for lack of subject-matter jurisdiction, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks omitted).  However, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (internal quotation marks omitted).

2. FERC and the FAA

Congress has vested exclusive jurisdiction to review FERC orders in the courts of appeals under the Federal Power Act, 16 U.S.C. § 825*l*(b), which provides:

> Any party . . . aggrieved by an order issued by the [Federal Energy Regulatory] Commission . . . may obtain a review of such order in the United States court of appeals for any circuit wherein the licensee or public utility to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia . . . Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.

---

agency." ECF No. 55 at 5.  Having already concluded that it lacks jurisdiction, and because Plaintiffs have not had the opportunity to respond to this argument, the court will not address it.

16 U.S.C. § 825*l*(b).

The D.C. Circuit has unambiguously held that "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the exclusive review of the Court of Appeals." *Telecomms. Rsch. & Action Ctr. v. FCC* (*TRAC*), 750 F.2d 70, 75 (D.C. Cir. 1984). As the Court explained in *TRAC*, "[a]ppellate courts develop an expertise concerning the agencies assigned them for review." *Id.* at 78. Thus, reserving exclusive jurisdiction in appellate courts "promotes judicial economy and fairness to litigants by taking advantage of that expertise." *Id.* "In addition, exclusive jurisdiction also eliminates duplicative and potentially conflicting review and the delay and expense incidental thereto." *Id.* (internal citation omitted).

Plaintiffs' NEPA and ESA claims fall squarely within the exclusive jurisdiction reserved for courts of appeals. *See Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 197 (3d Cir. 2018) (quoting *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958)) (explaining that the statutory review scheme in 16 U.S.C. § 825*l* "'necessarily preclude[s] de novo litigation between the parties of *all* issues inhering in the controversy, and *all* other modes of judicial review,' and that challenges brought in the district court outside that scheme are therefore 'impermissible collateral attacks'" (emphasis supplied)); *Pub. Util. Dist. No. 1 of Snohomish Cty., Wash. v. FERC*, 270 F. Supp. 2d 1, 5 (D.D.C. 2003) (discussing *City of Tacoma*, 357 U.S. at 335–36) (explaining that judicial review of a Commission order and "*all* objections to the order . . . must be made in the Court of Appeals or not at all" (emphasis supplied)).

Plaintiffs argue that because there is no FERC order to contest, this court has jurisdiction to fashion relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq. *See* ECF No. 44, Pls. Opp'n at 9–11. But the fact that Plaintiffs challenge inaction—i.e., the failure

to act in accordance with the agency's obligations under NEPA and the ESA—does not compel a different conclusion.

Plaintiffs cite no case law in support of their novel position that the court of appeals has "no jurisdiction at all outside the confines of a substantive order or decision within FERC's Federal Power Act jurisdiction." *Id.* at 11. Their argument also appears to be premised on a misunderstanding of the court's authority to review agency action under the APA. The APA is not jurisdictional—that is, it does not grant this court jurisdiction to review agency action. *TRAC*, 750 F.2d at 76–77 (citing *Califano v. Sanders*, 430 U.S. 99, 107 (1977)) ("[T]he APA unquestionably does not confer an independent grant of jurisdiction."). Rather, the APA acts as a "waiver of sovereign immunity" for claims against federal agencies in certain circumstances. *Trudeau v. FTC*, 456 F.3d 178, 186 (D.C. Cir. 2006). The distinction is not pedantic. This court's jurisdiction to review agency action falls under 28 U.S.C. § 1331, which gives district courts original jurisdiction over questions of federal law. And the D.C. Circuit has made clear that "a statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute." *TRAC*, 750 F.2d at 77. Thus, the APA does not confer jurisdiction where there is otherwise none.

More fundamentally, Plaintiffs' argument that the lack of agency action divests the court of appeals of exclusive jurisdiction was rejected by the D.C. Circuit in *TRAC*. *See TRAC*, 750 F.2d at 75 ("Here . . . the lack of a final order is the very gravamen of the petitioners' complaint. This lack of finality, however, does not automatically preclude our jurisdiction."). Where a statute like the Federal Power Act "commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the

*exclusive* review of the Court of Appeals." *Id.*; *see also id.* at 78 (noting that "[w]here statutory review is available in the Court of Appeals it will rarely be inadequate" to resolve a dispute).

To be sure, "[t]here may be a small category of cases in which the underlying claim is not subject to the jurisdiction of the Court of Appeals (and thus adjudication of the claim in the District Court will not affect any future statutory review authority of the Circuit Court)." *Id.* at 78. But Plaintiffs do not argue that their NEPA and ESA claims against FERC fall within this narrow exception, nor could they, given that the claims arise directly from "the requirement to seek approval under [] the Federal Power Act [] to interconnect [the Solder Creek Project] to the national electric grid." Am. Compl. ¶ 54. Because Plaintiffs' claims challenge a FERC order (or lack thereof), they fall within the exclusive jurisdiction bestowed upon the court of appeals by the Federal Power Act. *See Me. Council of the Atl. Salmon Fed. v. Nat'l Me. Fisheries Serv.*, 858 F.3d 690, 693 (1st Cir. 2017) (Souter, J., sitting by designation) ("The Supreme Court has made clear that the jurisdiction provided by [the Federal Power Act's jurisdictional provision] is 'exclusive,' not only to review the terms of the specific FERC order, but over any issue 'inhering in the controversy.'"). Accordingly, this court lacks subject-matter jurisdiction over Plaintiffs' claims against FERC.

The same is true with respect to the FAA. Like the Federal Power Act, 49 U.S.C. § 46110 is a "direct-review statute which vests exclusive jurisdiction in the courts of appeals for review of . . . actions by" the Department of Transportation and the FAA. *Nat'l Fed'n of the Blind v. U.S. Dep't of Transp.*, 78 F. Supp. 3d 407, 410 (D.D.C. 2015), *aff'd*, 827 F.3d 51 (D.C. Cir. 2016). In § 46110, Congress specified that "a person disclosing a substantial interest in an [FAA] order issued . . . in whole or in part under this part . . . may apply for review of the order by filing a petition for review" in the courts of appeals. 49 U.S.C. § 46110(a). Congress further

provided that the jurisdiction of the court of appeals would be "exclusive." *Id*. § 46110(c).

Thus, "section 46110(a)'s direct-review provision removes [a covered FAA order] from the

purview of the district court and places it within [the appellate court's] exclusive jurisdiction."

*Nat'l Fed'n of the Blind*, 827 F.3d at 57.

Plaintiffs claim that the FAA violated NEPA and the ESA in issuing a series of "no

hazard" determinations under 14 C.F.R. § 77.9.  *See* Am. Compl. ¶¶ 35–51.  The APA defines

"order" expansively as "the whole or a part of a final disposition, whether affirmative, negative,

injunctive, or declaratory in form, of an agency in a matter other than rulemaking but including

licensing." 5 U.S.C. § 551(6).  The D.C. Circuit has held that "[t]his definition plainly embraces

[a] 'no hazard' determination."  *City of Rochester v. Bond*, 603 F.2d 927, 933 (D.C. Cir. 1979);

*see also City of Dania Beach v. FAA*, 485 F.3d 1181, 1187 (D.C. Cir. 2007) (noting that the term

"order" in § 46110 should be read "expansively").  Thus, jurisdiction to review Plaintiffs' claims

regarding the FAA's no-hazard determinations lies exclusively with the courts of appeals and

those claims will therefore be dismissed for want of subject-matter jurisdiction.

To the extent Plaintiffs allege that the FAA failed to conduct required environmental

analysis outside the scope of the no-hazard determinations (which is unclear from the text of

their complaint), such claims would similarly fail for want of jurisdiction.  Plaintiffs argue that

their claims against the FAA are removed from "any substantive order under the Federal

Aviation Act" and because § 46110 "conspicuously fails to provide for Court of Appeals review

of agency action *withheld*, especially withheld under NEPA or ESA," this is an "APA case with

jurisdiction unmistakably founded in this District Court."  Pls. Opp'n at 12–13.  But again, the

APA is not jurisdictional and certainly does not preclude APA review by the court of appeals.

And, as with the 'no-action' claims against FERC, the court fails to see how Plaintiffs' claims

against the FAA could be disaggregated from the no-hazard determinations over which the court of appeals has exclusive jurisdiction.  These no-action claims are little more than a collateral attack on the FAA's decision to approve the Soldier Creek Project, a decision over which the court of appeals has exclusive review.  *See Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1089 (9th Cir. 2017) (finding that the district court did not have jurisdiction over an ESA failure-to-consult claim that "inherently challenge[d] the validity" of a registration order over which the court of appeals had exclusive jurisdiction).

Finally, Plaintiffs argue that this court has jurisdiction over claims against the FAA because "evidence is taken in the district courts" and "the district court can make the whole record" to determine compliance with NEPA and the ESA.  Pls. Opp'n at 14.  But the D.C. Circuit previously dismissed this concern in *TRAC*, finding "untenable any suggestion that appellate review of nonfinal agency action may be inadequate due to Courts of Appeals' inability to take evidence."  750 F.2d at 78.

Thus, Plaintiffs claims against FERC and the FAA fall within the court of appeals' exclusive jurisdiction and must be dismissed.

3. <u>Army Corps of Engineers</u>

Plaintiffs claim the Army Corps of Engineers violated the ESA in issuing permits which allowed NextEra to transport heavy construction equipment over controlled waterways.  Am. Compl. ¶ 53.  Specifically, they contend that the Army Corps of Engineers failed to adequately consult with the Department of the Interior pursuant to 16 U.S.C. § 1536(a)(2) prior to issuing the permits.  *Id.*

Although Plaintiffs bring this challenge under the ESA's citizen-suit provision at 16 U.S.C. § 1540(g), in order to maintain such a suit, Plaintiffs must comply with

§1540(g)(2)(A), which prohibits the filing of a citizen-suit "(i) prior to sixty days after written notice of the violation has been given to the Secretary [of the Interior], *and* to any alleged violator of any such provision or regulation" (emphasis added).  Plaintiffs provided two letters, ECF Nos. 44-2 and 44-3, to show they had complied with the ESA's sixty-day notice requirement.  And while both letters are addressed to Secretary of the Interior, neither give notice to the Army Corps of Engineers as the statute requires.

Acknowledging this procedural deficiency, Plaintiffs argue that the sixty-day requirement should be waived under 16 U.S.C. § 1536(m), which states that the requirement "shall not apply with respect to review of any final determination of the Committee under subsection (h) of this section granting an exemption from the requirements of subsection (a)(2) of this section." 16 U.S.C. § 1536(m).  The waiver applies in the limited situation in which a plaintiff challenges a decision by the Endangered Species Committee granting an exemption from the § 7 consultation requirements.  It does not apply here, as the Endangered Species Committee did not convene nor did it grant the Army Corps of Engineers an exemption from their § 7 consultation requirements.  Accordingly, Plaintiffs' claims against the Army Corps of Engineers fail for lack of jurisdiction.[4]

4. <u>Mandamus Claims</u>

Lastly, Plaintiffs seek an order of mandamus directing the Department of Justice to represent Plaintiff Mattwaoshshe and his tribe in this matter under §§ 174, 175, and 185 of Title 25 and under the American Indian Religious Freedom Act ("AIRFA").  Am. Compl. ¶ 60–65.

---

[4] Plaintiffs also raise a NEPA claim against the Army Corps of Engineers, for the first time, in their opposition brief.  In their view, paragraph 53 of their Amended Complaint is "minimally sufficient to satisfy the pleading requirements for a separate NEPA claim."  Pls. Opp'n at 19. The court disagrees.  That paragraph does not reference NEPA and the court will not permit Plaintiffs to amend their complaint by way of an opposition brief.

But neither Title 25 nor AIRFA impose a non-discretionary duty on the Department of Justice to litigate on Plaintiffs' behalf, and therefore Plaintiffs have failed to satisfy the mandamus statute's jurisdictional requirements.

Under 28 U.S.C. § 1361, a district court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The D.C. Circuit has held that a "court may grant mandamus relief only if: (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." *Baptist Mem'l Hosp. v. Sebelius*, 603 F.3d 57, 62 (D.C. Cir. 2010) (citation omitted). If any of these three requirements are not met, "a court must dismiss the case for lack of jurisdiction." *Lovitky v. Trump*, 949 F.3d 753, 759 (D.C. Cir. 2020).

There is nothing in the provisions Plaintiffs cite—25 U.S.C. §§ 174, 175, 185, or AIRFA—that requires the United States to represent Plaintiffs in this case. Thus, Plaintiffs have failed to demonstrate that the Department of Justice "has a clear duty to act." *Baptist Mem'l Hosp.*, 603 F.3d at 62.

For instance, § 174 of Title 25 states that "[t]he President is *authorized* to exercise general superintendence and care over any tribe or nation which was removed upon an exchange of territory under authority of the act of May 28, 1830 . . . and to cause such tribe or nation to be protected, at their new residence" (emphasis supplied). But this language does not impose a duty on the Department of Justice to represent aggrieved Plaintiffs. And notwithstanding that § 175 provides that "[i]n all States and Territories where there are reservations or allotted Indians the United States shall represent them in all suits at law and in equity," the D.C. Circuit has found that this provision "impose[s] only a discretionary duty of representation," *Pyramid Lake Paiute*

*Tribe of Indians v. Morton*, 499 F.2d 1095, 1097 (D.C. Cir. 1974).  S*ee also Siniscal v. United States*, 208 F.2d 406, 410 (9th Cir. 1953) (explaining that § 175 "is not mandatory and that its purpose is no more than to ensure the Indians adequate representation in suits to which they might be parties").

> Plaintiffs reliance on § 185 fares no better.  That section provides:

> Whenever any Indian, being a member of any band or tribe with whom the Government has or shall have entered into treaty stipulations . . . has had a portion of the lands belonging to his tribe allotted to him in severalty . . . the agent and superintendent of such tribe shall take such measures . . . as may be necessary to protect such Indian in the quiet enjoyment of the lands so allotted to him.

25 U.S.C. § 185 (emphasis added).  But like § 175, § 185 does not impose a duty on the United States or its agents "to litigate all title problems which may be created by. . . Indian[s] dealing with lands which . . . are subject to state law.'"  *Dillon v. Antler Land Co.*, 341 F. Supp. 734, 742 (D. Mont. 1972), *aff'd*, 507 F.2d 940 (9th Cir. 1974).  Further, as with § 175, "an action brought by a competent plaintiff to enforce individual rights . . . is not an action by the United States or the equivalent of an action by the United States." *Id.*

> Because §§ 174, 175, and 185 do not compel the United States to represent Plaintiffs, the court lacks jurisdiction to issue a writ of mandamus ordering the Department of Justice to represent Plaintiffs under these sections of Title 25.

> With respect to AIRFA, that statute provides:

> On and after August 11, 1978, it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

42 U.S.C. § 1996. As the language indicates, AIRFA is a policy statement that does not create a cause of action or any judicially enforceable individual rights. *See, e.g.*, *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 455 (1988) ("Nowhere in [AIRFA] is there so much as a hint of any intent to create a cause of action or any judicially enforceable individual rights."). Accordingly, nothing in AIRFA requires the Department of Justice to litigate Plaintiffs' claims.

## B.  <u>NextEra and Evergy</u>

Defendants NextEra and Evergy seek dismissal for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). *See* ECF Nos. 39, 40. The court agrees that dismissal of these claims is appropriate.

A plaintiff bears the burden of establishing a basis for the exercise of personal jurisdiction, *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990), by alleging "specific acts connecting [the] defendant with the forum," *Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (alteration in original) (internal quotation marks omitted). When evaluating a motion to dismiss for lack of personal jurisdiction, the "court must resolve factual disputes in favor of the plaintiff." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quoting *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004)). However, a court need not "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Id*. (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

Where a defendant does not reside in the forum—which Plaintiffs concede as to NextEra and Evergy—the plaintiff must show that specific personal jurisdiction exists. *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017). In this district, personal

jurisdiction is governed by the District of Columbia's long-arm statute, D.C. Code § 13–423,

which provides specific jurisdiction over claims "arising from" the defendant's:

> (1) transacting any business in the District of Columbia;
> (2) contracting to supply services in the District of Columbia;
> (3) causing tortious injury in the District of Columbia by an act or omission in the
> District of Columbia;
> (4) causing tortious injury in the District of Columbia by an act or omission outside
> the District of Columbia if he regularly does or solicits business, engages in any
> other persistent course of conduct, or derives substantial revenue from goods used
> or consumed, or services rendered, in the District of Columbia.

D.C. Code § 13–423(a).  The requirement that the claims "arise from" one of these actions is

interpreted flexibly as "relat[ing] to" or "having a substantial connection with" and that "at a

minimum . . . the claim raised must have a discernible relationship to the defendant's business

transacted in the district."  *Alkanani v. Aegis Def. Servs., LLC*, 976 F. Supp. 2d 13, 27 (D.D.C.

2014) (internal quotation marks omitted).

Plaintiffs claim the court has specific jurisdiction over NextEra because Plaintiffs' claims

arise out of business transacted in the District of Columbia—specifically, lobbying efforts and

energy sales.  As for Evergy, Plaintiffs appear to argue that their claims arise out of Evergy's

transportation of energy from the Soldier Creek Project into the District of Columbia, or in the

alternative, that there is personal jurisdiction over NextEra, and that Evergy and NextEra are co-

conspirators.  The court disagrees and concludes it lacks specific personal jurisdiction over either

Defendant.

1. NextEra[5]

Plaintiffs argue that NextEra's business is subsidized by the United States government

and therefore NextEra must have transacted business in the District of Columbia to have

---

[5] The court's analysis in this section applies with equal force to all the NextEra defendants.

qualified for those subsidies.  *See* Am. Compl. ¶ 13.  The court has already rejected this argument and Plaintiffs have supplied nothing to alter its prior analysis.  Plaintiffs identify no specific actions NextEra has taken *in the District of Columbia* that led to the receipt of government subsidies, such as meetings with government officials.  Rather, they ask the court to infer that government subsidies were the result of such transactions.  *See id.* ¶ 6.  Putting aside whether this is a reasonable inference, the court has already held that such lobbying transactions would fall under the well-established "government contacts" exception and would not be a basis to assert personal jurisdiction.  *See* ECF No. 28 at 4; *see also Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 230 (D.D.C. 2007) (finding that government relations and lobbying connections fall within the "government connections" exception to the District of Columbia's long-arm statute) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)); *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 62 (D.D.C. 2006) (holding that lobbying efforts to secure a government contract could not establish personal jurisdiction).[6]

Plaintiffs also argue that NextEra transacted business in the District of Columbia by virtue of its subsidiary NextEra Energy Resources LLC, which "is a direct and substantive player in the District of Columbia wholesale and retail energy market," Am. Compl. ¶ 11d, and that "the electricity market revenue generated in D.C. also allowed it to build a nuisance in Kansas," Pls. Opp'n at 7.  Even if true, Plaintiff has failed to demonstrate how the subsidiary's "extensive, daily business presence and activity in the District of Columbia," Am. Compl. ¶ 11d, or how energy sales to District residents, have a discernable relationship with the tort claims Plaintiffs

---

[6] Plaintiffs argue that the government contacts exception unconstitutionally deprives them of their First Amendment right to petition the government.  Pls. Opp'n at 26.  But the government contacts exception simply establishes *where* a plaintiff may avail themselves of the judicial system, not *whether* they may do so.

assert, which occurred in Kansas.  Energy sales in the District of Columbia would demonstrate that NextEra had transacted business in this forum, but the long-arm statute requires more—the conduct that gives rise to a suit must arise from the transactions.  And the claims arising from the Solider Creek Project in Kansas have no substantial connection or discernable relationship to energy sales in the District of Columbia.  Indeed, Plaintiffs' interpretation of the D.C. long-arm statute would render the term "arises from" so broad as to be meaningless.

Finally, Plaintiffs contend that "discovery will establish personal jurisdiction," and "would uncover the details of very extensive federal policy and oversight interactions" by NextEra in the District of Columbia.  ECF No. 25 at 10.  But Plaintiffs do not proffer how such jurisdictional discovery could establish personal jurisdiction.

While discovery under the Federal Rules of Civil Procedure is to be "broad in scope and freely permitted," *Naartex*, 722 F.2d at 788, a court can deny discovery if it cannot determine "what facts additional discovery could produce that would affect [the] jurisdictional analysis," *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 892 (D.C. Cir. 2021).  A plaintiff must "demonstrate that it can supplement its jurisdictional allegations through discovery" to be entitled to jurisdictional discovery.  *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009).  Here, Plaintiffs' theory of discovery is based on speculation that discovery would reveal acts falling within the government contacts exemption.  This is an insufficient basis for jurisdictional discovery.

2. <u>Evergy</u>

As with their claims against NextEra, Plaintiffs' claims against Evergy do not arise from alleged injuries suffered in the District of Columbia—their claims target Evergy's activities in

Kansas.  Evergy does not even conduct business or supply services directly to the District of Columbia.

Plaintiffs' arguments to the contrary are unpersuasive.  They argue that Evergy has "agreed to purchase and [] transport the electricity produced from the project" to the national grid, which services the District of Columbia.  Am. Compl. ¶ 7.  This does not meet the long-arm statute's requirement that the conduct at issue arises from business activity within the District of Columbia.

Plaintiffs also attempt—without success—to tether their claims against Evergy to NextEra, which, as discussed above, has a subsidiary that supplies electricity to the District of Columbia.  Plaintiffs claim that Evergy "is a cooperating partner with the Nextera Defendants in [an] actionable scheme to circumvent federal statutory duties and responsibilities and to transport into interstate commerce the ill-gotten proceeds from their unlawful conduct" involving clean energy and related credits.  Pls. Opp'n at 35.  They further contend that Evergy "has conspired with Nextera Defendants . . . to transport the 'clean energy' and the selling of carbon and clean energy credits outside of Kansas and eventually into the District of Columbia," all while circumventing "the federal oversight scheme among D.C. based federal agencies."  *Id*. at 36.

Even assuming all these facts are true, the court has already held that the claims against NextEra do not have enough of a connection to the District of Columbia to establish long-arm jurisdiction.  And to the extent Plaintiffs attempt to plead a conspiracy, they have failed to identify "an overt act by a co-conspirator within the forum, subject to the long-arm statute, and in furtherance of the conspiracy."  *Globe Metallurgical, Inc. v. Rima Indus. S.A.*, 177 F. Supp. 3d 317, 323 (D.D.C. 2016) (setting forth the requirements for a court to exercise personal jurisdiction over a non-resident co-conspirator under the so-called 'conspiracy theory' of

jurisdiction). Furthermore, Plaintiffs' argument amounts to little more than "bald speculation" that Evergy and NextEra are engaged in a conspiracy, and is "insufficient to establish jurisdiction under a conspiracy theory." *Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C. Cir. 1997).

Thus, the court is unable to exercise specific personal jurisdiction over Evergy and its motion to dismiss pursuant to Rule 12(b)(2) must be granted.

## C.  **Soldier Creek**

Defendant Soldier Creek, which has consented to personal jurisdiction, seeks dismissal of Plaintiffs' negligence and nuisance claims pursuant to Fed. R. Civ. P. 12(b)(1) on the basis that the claims fail to meet Article III's standing and ripeness requirements. Specifically, they argue that Plaintiffs have not suffered an injury in fact. ECF No. 38-1 at 7. The court disagrees. Nevertheless, having already determined that the claims against the Federal Defendants ought to be dismissed, the court declines to exercise supplemental jurisdiction over Plaintiffs' Kansas-state law claims against Soldier Creek.

### 1.  Standing and Ripeness

Federal courts are vested with the power of judicial review extending only to "Cases" and "Controversies." U.S. Const. art. III, § 2. Courts have, in interpreting this limitation on judicial power, "developed a series of principles termed 'justiciability doctrines,' among which are standing ripeness, mootness, and the political question doctrine." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996). In order to bring a claim, a Plaintiff must establish both standing and ripeness. *Lujan*, 504 U.S. at 560 ("[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III.");

*Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 208 (D.C. Cir. 2007) ("[R]ipeness goes to our subject-matter jurisdiction.").

To have standing, a plaintiff must establish that they have suffered an "injury in fact." *Lujan*, 504 U.S. at 560. An injury in fact must be both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id*. Allegations of future injury can establish injury in fact if the injury is "certainly impending" and not merely possible. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). There is no injury in fact if the theory of future injury relies on "a highly attenuated chain of possibilities." *Id*. at 410.

To show constitutional ripeness "the plaintiff must establish constitutional minima akin to that of standing by showing an injury-in-fact." *Oregonians for Floodplain Prot. v. U.S. Dep't of Commerce*, 334 F. Supp. 3d 66, 73 (D.D.C. 2018). Ripeness "shares the constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treasury Emps. Union*, 101 F.3d at 1427. Where a plaintiff seeks prospective declaratory and injunctive relief, it "must establish an ongoing or future injury that is 'certainly impending'" and it cannot "rest on past injury." *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016).

Plaintiffs have suffered an injury in fact and their claims are ripe. When Plaintiffs filed their complaint, the wind turbines at issue were still under construction, but the Soldier Creek Project is now fully operational. *See* ECF No. 54. Plaintiffs allege that the operation and presence of the wind turbines will interfere with the use and enjoyment of their properties through "incessant noise, vibrations, shadow flicker and strobe lighting." Am. Compl. ¶¶ 74, 83. This is a concrete and particularized injury. That these effects will occur, or are occurring, is a material factual allegation that the court must accept as true when resolving a 12(b)(1) motion.

20

For this same reason, Plaintiffs' claims are ripe for review—the injury they claim is certainly impending, if not presently occurring.

2. Supplemental Jurisdiction

Although standing and ripeness are necessary to establish subject-matter jurisdiction, that is not where the inquiry ends.  Federal courts have subject-matter jurisdiction under the grant of federal-question jurisdiction in 28 U.S.C. § 1331, or diversity jurisdiction in 28 U.S.C. § 1332. However, the supplemental jurisdiction statute, 28 U.S.C. § 1367, confers on the district courts, "in any civil action of which the district courts have original jurisdiction . . . supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  "The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).

Plaintiffs seek to tie their Kansas state law claims against the Corporate Defendants to their federal law claims against the Federal Defendants by invoking the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).  *See* Am. Compl. ¶ 5 (claiming that the state law claims are part of the same "case and controversy" as the claims against the Federal Defendants). But because the court will dismiss all the federal question claims, it must decide whether to exercise supplemental jurisdiction over Plaintiffs' remaining Kansas tort claims pursuant to 28 U.S.C. § 1367(c).  It declines to do so.

A court should consider "judicial economy, convenience, fairness, and comity" when determining whether to exercise supplemental jurisdiction.  *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988).  Moreover, "in the usual case in which all federal-law claims are

eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*.  The Supreme Court has held that "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966).  The view has been echoed by the D.C. Circuit.  *See e.g.*, *Shekoyan v. Sibley Int'l*, 409 F.3d 414, 424 (D.C. Cir. 2005) (finding no abuse of discretion when the district court declined supplemental jurisdiction after all federal claims had been dismissed).

Given the early stage of these proceedings and the fact that discovery has not yet taken place, it is not overly inconvenient nor unfair to the parties to decline supplemental jurisdiction. *See Turpin v. Ray*, 319 F. Supp. 3d 191, 206 (D.D.C. 2018) (finding it was not unfair to the parties to decline supplemental jurisdiction when discovery had not yet taken place).  As these claims concern Kansas law, both comity and judicial economy suggest the claims can be dealt with more appropriately and more efficiently in Kansas state court.  *See Pollard v. District of Columbia*, 191 F. Supp. 3d 58, 82–83 (D.D.C. 2016), *aff'd*, 698 F. App'x 616 (D.C. Cir. 2017) (weighing familiarity with District of Columbia tort law in declining supplemental jurisdiction); *see also Runnymede-Piper v. District of Columbia*, 952 F. Supp. 2d 52, 61 (D.D.C. 2013) ("[T]he District of Columbia Superior Court would naturally have greater familiarity and interest in the issues that remain.").  In short, there is no reason to think of this as anything other than the "usual case" in which supplemental jurisdiction should be declined.

Plaintiffs argue that the court should exercise supplemental jurisdiction because the state law claims do not raise novel or complex issues of state law and it would be possible to apply Kansas law without difficulty.  Pls. Opp'n at 32–33.  However, "judicial economy is not the only relevant factor" a court should consider, *Shekoyan*, 409 F.3d at 424, and this fact alone certainly

does not outweigh the rest of the court's analysis.  The court will decline supplemental

jurisdiction.[7]

As the court no longer has jurisdiction over the claims before it, there is no reason to

address Soldier Creek's 12(b)(6) motion to dismiss for failure to state a claim.

### III.    CONCLUSION

For the foregoing reasons, the Federal Defendants' motion to dismiss will be GRANTED

and all claims against the Federal Defendants will be DISMISSED for lack of subject-matter

jurisdiction.  Likewise, Defendants NextEra and Evergy's motions to dismiss will be GRANTED

and the claims against those defendants will be DISMISSED for lack of personal jurisdiction.

As there are no longer any claims over which this court has original jurisdiction, the court will

DECLINE to exercise supplemental jurisdiction over the remaining state law claims against

Defendant Soldier Creek.  Accordingly, the claims against Defendant Soldier Creek will be

DISMISSED without prejudice.  The court will issue an accompanying order.

Date:  August 17, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge

---

[7] Plaintiffs state that if the court declines supplemental jurisdiction over their Kansas claims, they can amend to state diversity jurisdiction.  Pls. Opp'n at 31–32.  There is no need for the court to address that possibility now.  However, Plaintiffs should note that a court may "transfer [an] action to any other district where it could have been brought" for "the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a); *see also Pinson v. U.S. Dep't of Just.,* 74 F. Supp. 3d 283, 291 (D.D.C. 2014) ("Regardless of whether venue is proper, courts retain discretion to transfer a claim to another district.").